UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| SADIE M. PLUMP, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Commissioner of Social Security, <br><br> Defendant. | CAUSE NO. 1:13-cv-1446-DKL-SEB |

**ENTRY**

Plaintiff, Sadie M. Plump, applied for disability-insurance benefits and supplemental-security-income benefits under the Social Security Act. Plaintiff claimed that she became disabled beginning on November 23, 2009. Plaintiff filed this action for judicial review of the Commissioner's decision.

**Standards of review and disability**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ▪ 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. ▪§ 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. ▪ 404.1525. If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's

ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. ▪ 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for

4

a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Plaintiff alleges that she is disabled as a result of a seizure disorder, carpal tunnel syndrome, migraine headaches, chronic anemia, and asthma. Functionally, Plaintiff's

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

carpal tunnel syndrome caused numbness, tingling, problems with her grip and ability to hold onto things, and restricted her ability to perform certain daily activities. The migraine headaches resulted in blurred vision, a sick feeling, and weakness. Her chronic anemia made her tired during menses. She had no difficulty sitting, standing, or walking.

Plaintiff was forty-nine years old on the date of the Administrative Law Judge's (the "ALJ") hearing. She completed high school, and has past relevant work experience as a certified nursing assistant (classified as semi-skilled work at the medium exertional level). After the alleged disability onset date of November 23, 2009, Plaintiff returned to part-time work in March 2010. However, Plaintiff stopped part-time work in October 2010 because of her carpal tunnel syndrome. She then attempted to return to full-time work in early 2011, but stopped after about six months. The ALJ found this work did not amount to substantial gainful activity.

After being denied initially and upon reconsideration, Plaintiff requested and received a hearing before an ALJ. Plaintiff was represented at the hearing by current counsel. The ALJ issued her decision on May 24, 2012, denying Plaintiff's claim. After having her request for review denied by the Appeals Council, Plaintiff filed the present suit to obtain judicial review of the Commissioner's decision.

At step one of the evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 23, 2009. At step two, the ALJ found that Plaintiff had the severe impairments of seizure disorder, residuals of carpal tunnel syndrome and decompression of the ulnar nerve, and migraine headaches. At step three, the ALJ evaluated Plaintiff's seizure disorder and migraine

headaches under Listing 11.02 (epilepsy—convulsive epilepsy (grand mal or psychomotor)) and Listing 11.03 (epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal)), and evaluated Plaintiff's carpal tunnel syndrome and decompression of ulnar nerve impairments under Listing 11.14 (peripheral neuropathies). After evaluating each impairment under its corresponding Listing, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal any of the criteria.

Before step four, the ALJ was required to determine Plaintiff's residual functional capacity ("RFC"). She found that Plaintiff has the RFC to perform a range of light work, with the following additional restrictions: can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds; frequently can balance, stoop, crouch, and kneel, but never crawl; can perform frequent fine and gross manipulation with the right upper extremity, and has no limitations with the left upper extremity; and is to avoid concentrated exposure to extreme heat and cold, fumes, odors, and gases, and all exposure to hazards such as heights and machinery.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a certified nursing assistant because the job involved semi-skilled work at the medium exertional level. At step five, the ALJ relied on a vocational expert's testimony regarding the number of jobs existing for a person with the ALJ's defined RFC and Plaintiff's vocational characteristics (age, education, and work experience) to conclude that a significant number of jobs exists in the national economy that Plaintiff can perform. As such, the ALJ found Plaintiff not disabled.

Plaintiff requested review of the ALJ's decision, and the Appeals Council denied this request. The Appeals Council considered the additional evidence that Plaintiff submitted, which included JWM Neurology Treatment Records (dated June 27, 2011), Westside Clinic Records (dated from May 24, 2011 to March 28, 2012), and Indiana Hand Center Records (dated from December 19, 2011 to May 7, 2012). Also, the Appeals Council looked at records from St. Vincent's Hospital from July 2, 2012 and Wishard Memorial Hospital from June 5, 2012 through July 11, 2012. The Appeals Council concluded that the new evidence submitted by Plaintiff did not provide a basis for overturning the ALJ's decision, and that the hospital records from St. Vincent's and Wishard did not affect the ALJ's decisions because the records addressed a later time period. Thus, the Appeals Council denied Plaintiff's request for review. Therefore, the Court reviews the ALJ's decision as the final decision and rationale of the Commissioner on Plaintiff's claim.

## Discussion

Plaintiff contends that the ALJ committed several errors warranting reversal of the decision.

**1. Carpal Tunnel and Manipulation Limitations.**

Plaintiff argues the ALJ erred by not finding her disabled with respect to her carpal tunnel syndrome.

### a. Future Time Period.

The ALJ considered the success of Plaintiff's first carpal tunnel surgery in reaching her conclusion that Plaintiff was not disabled. The first surgery was successful, and Plaintiff was released to work with no restrictions within a month of the surgery.

Plaintiff argues that the ALJ "impermissibly played doctor" in determining that her carpal tunnel syndrome would be resolved after the second surgery. Plaintiff argues the ALJ improperly concluded that, because no opinion of a treating medical source existed regarding her restriction following the second surgery, there was no basis for the ALJ to not restrict the use of her right arm. Plaintiff further argues that the ALJ should have contacted the surgeon to obtain his opinion regarding her restrictions. However, Plaintiff carries the burden of proving that the second surgery would not improve her carpal tunnel syndrome within one year. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (noting that the claimant has the burden of proof in the first four steps of the analysis, which includes the durational requirement). The duration and recovery time issue was addressed at the hearing, so Plaintiff knew the importance of the treating medical source opinion. The ALJ left the record open for twenty days to allow Plaintiff to submit a medical-source statement from her hand surgeon about her second carpal tunnel surgery, specifically any limitations that the surgeon prescribed at the follow-up appointment. The ALJ offered to grant even more time beyond the original twenty days if Plaintiff so requested. Plaintiff submitted additional medical records to the Appeals Council; however, she failed to submit an opinion to the ALJ from her hand surgeon.

9

Plaintiff had her second carpal tunnel surgery on October 14, 2011, and the hearing before the ALJ was held on November 16, 2011—just over a month after the surgery. Two weeks after Plaintiff's first surgery, she was released to work with no use of her right arm. Seven weeks after the first surgery, Plaintiff was released to work with no restrictions or limitations of her right arm. At the hearing, the ALJ noted that carpal tunnel "is a condition amenable to treatment" and that "recovery is expected in the majority of those cases." [R. 78.] The ALJ held, "there is no basis to conclude that this recurrence of carpal tunnel syndrome would not be resolved within twelve months after the surgery, as it did after the surgery in the fall of 2009." [R. 24-25.] Given that Plaintiff recovered and was released to work without any restrictions seven weeks after her first carpal tunnel surgery, the ALJ could reasonably conclude that recovery from the second surgery would follow this same course, especially since Plaintiff did not introduce any evidence or opinion to the contrary.

Plaintiff's failure to obtain the opinion of her surgeon, which would have further substantiated her claim, is evidence that "further supports the ALJ's determination that [Plaintiff] was not eligible for disability benefits." *Scott v. Sullivan*, 898 F.2d 519, 523 (7th Cir. 1990). Because Plaintiff was represented by counsel, the ALJ was entitled to assume that she made her best case for benefits. *See Elbert v. Barnhart*, 335 F.Supp.2d 892, 960 (E.D. Wis. 2004) ("When the claimant is represented by counsel at the administrative hearing, the ALJ is ordinarily entitled to rely on counsel to identify the issues that require further development."). The ALJ did not err in determining that, based on Plaintiff's

recovery after her first surgery, she would fully recover within twelve months of her second surgery.

### b. Credibility Determination.

Plaintiff argues that the ALJ's credibility determination was patently erroneous. She claims that the ALJ rejected her complaints of manipulative difficulties by simply assuming the second surgery would be successful within twelve months. Courts give substantial deference to an ALJ's credibility determination. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). ALJs are in the best position to judge a claimant's credibility and, therefore, courts generally will not reverse an ALJ's credibility findings unless they are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). However, ALJs are required to adequately articulate their evaluation of the evidence, building an accurate and logical bridge from the evidence to their conclusions. *Id.* at 310.

As to the issue of whether Plaintiff's disability, if any, was reasonably expected to last twelve months going forward, the ALJ adequately determined Plaintiff's credibility. She conducted a well-reasoned analysis and provided sufficient justification for her decision to discount Plaintiff's credibility. For example, the ALJ noted that Plaintiff's daily activities are not as limited as would be expected from her alleged disabling symptoms. The ALJ also cited Plaintiff's continued work activity after the alleged onset date of her carpal tunnel syndrome. Furthermore, Plaintiff had not been compliant in taking her prescribed medications, thus allowing the ALJ to justifiably discount her allegations. Given the ALJ's thorough analysis regarding Plaintiff's credibility, the Court

11

finds that the ALJ's credibility determination for the twelve month period moving forward was not patently wrong.

**c. Closed Period.**

Although the ALJ did not err in finding that Plaintiff's disability, if any, was not expected to last for twelve months, the ALJ must account for the period from when Plaintiff's carpal tunnel syndrome recurred to when she reasonably would have recovered from the second surgery (*i.e.*, the "closed period"). When dealing with a closed-period case, an ALJ must "determine[] that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of [the] decision." *Pickett v. Bowen*, 833 F.2d 288, 289 at n.1 (11th Cir. 1987). An ALJ must determine "whether (or, more aptly, when) the payments of benefits should be terminated." *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002).

Plaintiff's first carpal tunnel surgery occurred in September 2009. In October 2009, she was released to work by her doctor with no restrictions. However, in June 2010, she began complaining of pain in her right hand—the hand that had undergone the surgery. Throughout 2010 and most of 2011, Plaintiff complained of pain in her right hand, and eventually had a second surgery on October 14, 2011. The ALJ failed to consider whether the period from when Plaintiff first began complaining of pain after her first surgery to the time when she underwent her second surgery qualified as a closed period of disability. Therefore, on remand, the ALJ must determine whether Plaintiff was disabled during this period. The ALJ must articulate her analysis of this closed period and a more focused credibility determination of those months. Specifically, the ALJ must describe

12

what limitations, if any, Plaintiff had as a result of her recurrence of carpal tunnel syndrome during this period.

### d. Considering Other Testimony.

Plaintiff contends that the ALJ's failure to consider evidence from Plaintiff's mother is a ground for remand. ALJs must "consider evidence provided by other 'non-medical sources' such as spouses, other relatives, friends, employers, and neighbors." SSR 06-03p; *see also Cruse v. Comm'r of Social Security*, 502 F.3d 532, 541 (6th Cir. 2007). However, ALJs need not address a lay witness's testimony when it is "essentially redundant" of testimony already in the record. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).

Plaintiff testified to limitations in the use of her right arm, and the ALJ fully addressed those limitations. Plaintiff's mother's testimony did not amount to "an entire line of evidence" that the ALJ failed to consider, but rather "essentially corroborated" Plaintiff's testimony. *Carlson*, 999 F.2d at 181. Therefore, the ALJ was not required to address Plaintiff's mother's testimony about her difficulties in using her right hand because the testimony was duplicative. The ALJ's failure to consider the mother's testimony is not a cause for remand.

### 2. Failure to Account for Migraines and Chronic Anemia in RFC Determination.

Lastly, Plaintiff argues that the ALJ failed to take into account her migraines and chronic anemia.

**a. Migraine Headaches.**

In April 2010, Plaintiff completed a Headache Questionnaire, indicating that she had suffered from headaches since 1989. [R. 287.] Plaintiff also indicated that she sometimes experienced headaches as often as three times per week, each lasting for two days at a time. When experiencing a headache, Plaintiff noted, "I fill [sic] like sick I can't do nothing, my body aches fill [sic] weak." The extent of the ALJ's discussion of Plaintiff's headache impairment is as follows:

> In terms of the claimant's alleged migraine headaches, she complained of headaches in March and May 2011. In December 2011, Dr. Ridel noted that she continued to have headaches possibly once per week. She reported that Imitrex works much better than her previous medication, but she still had headaches for three to four hours. She was prescribed Topamax at night for headache prophylaxis and to continue Imitrex as needed for headache abortive therapy.

[R. 25.]

Plaintiff argues that the ALJ failed to explain how she concluded that Plaintiff's migraine impairment did not result in any limitations. The Court agrees that, although the ALJ found Plaintiff's migraine headaches severe at step two, she failed to discuss the effects and potential limitations resulting therefrom.

Although ALJs are not required to address every piece of evidence in the record, they are required to "confront the evidence that does not support [their] conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). Here, the ALJ specifically found Plaintiff's migraines to be severe, but did not confront the evidence of limitations resulting from the headaches and explain why that evidence was rejected. On

14

remand, the ALJ must reconsider and articulate why Plaintiff has no limitations resulting from migraines.

**b. Chronic Anemia.**

Plaintiff argues the ALJ erred by ignoring evidence of her chronic anemia. Plaintiff testified that she suffered from chronic anemia. [R. 417.] As treatment, she was prescribed iron pills. However, the pills made her sick, so the doctor administered iron intravenously. At the hearing, Plaintiff claimed that she gets "tired" and has "spells" due to her anemia. Although the record contains evidence of Plaintiff's anemia, the ALJ did not mention anemia in her decision. The ALJ must address Plaintiff's anemia and articulate why it does not result in, or contribute to, any restrictions or limitations.

## Conclusion

The Commissioner's decision denying Plaintiff's claim for disability-insurance benefits and supplemental-security-income benefits will be **REVERSED**, and her claim will be **REMANDED** to the Commissioner. Consistent with this Entry, on remand, the Commissioner shall **(1)** consider a closed period of disability, which must include a more focused credibility determination for such period, specifically evaluating and articulating Plaintiff's limitations during the period and **(2)** address Plaintiff's migraines and anemia,

15

including articulating any limitations resulting from those conditions, and whether such limitations, alone or in combination with her other impairments, are disabling.

**DONE this date:** 03/12/2015

_Denise K. LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel *via* ECF-generated e-mail.